UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SEAN C. MALTBIE and MICHELLE R.
MALTBIE,

      Plaintiffs,

v.                                          Case No. 1:12-CV-1002

BANK OF AMERICA, FEDERAL HOUSING      HON. GORDON J. QUIST
FINANCE AGENCY, as conservator for
the FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("FANNIE MAE"), and THE
FEDERAL NATIONAL MORTGAGE
ASSOCIATION (FANNIE MAE),

      Defendants.
_____/

## **OPINION**

Plaintiffs, Sean C. and Michelle R. Maltbie, have sued Defendants, Bank of America (BOA) and the Federal National Mortgage Association (Fannie Mae), alleging various claims based on their assertion that they were entitled to a modification of the loan on their residence. In their third amended complaint, the Maltbies allege claims for breach of contract (Count I), promissory estoppel (Count II), quiet title (Count III), violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, M.C.L. § 445.1651a *et seq.* (Count IV), fraudulent misrepresentation (Count V), innocent misrepresentation (Count VI), negligence or negligent misrepresentation (Count VII), intentional infliction of emotional distress (Count VIII), and violation of the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.* (Count IX).

Defendants have moved to dismiss all claims in the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. # 50.) The Maltbies have

filed a response (dkt. # 57), to which Defendants have replied (dkt. # 60). For the reasons set forth below, the Court will grant Defendants' motion and dismiss the third amended complaint with prejudice.[1]

I. BACKGROUND

**A.  Facts**

The following facts are based on the allegations in the Maltbies' third amended complaint, the documents attached thereto, matters of public record, and exhibits attached to Defendants' motion that are referred to in the complaint.[2]

On June 13, 2006, the Maltbies, obtained a mortgage loan from Countrywide Mortgage Ventures, LLC d/b/a Hearthside Home Loans in the principal amount of $250,100. As security for the loan, the Maltbies granted a mortgage (Mortgage) on real property commonly known as 2548 Mason Ridge Ct., NE, Grand Rapids, Michigan 49525, to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide. (Defs.' Br. Supp. Mot. Ex. A.) On November 11, 2010, MERS assigned the Mortgage to BAC Home Loans Servicing, L.P. (Defs.' Br. Supp. Mot. Ex. B.) BOA now owns the Mortgage, as the successor by merger to BAC Home Loans Servicing, L.P. (3d Am. Compl. ¶ 8.)

In 2010, the Maltbies fell behind on their Mortgage payments and, consequently, defaulted on the Mortgage. (*Id.* ¶¶ 10, 14, 15.) In November 2010, BOA initiated a foreclosure by advertisement proceeding. (*Id.* ¶ 15.) On February 14, 2011, BOA sent the Maltbies a Special

---

[1] Having carefully reviewed the parties' briefs, the Court finds that they fully address the issues raised in Defendants' motion. Thus, the Court concludes that oral argument is unnecessary.

[2] Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Rule 12(b)(6), courts may consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Forbearance Agreement, which deferred a portion of the Maltbies' monthly mortgage payments. The Special Forbearance Agreement contained the following provision:

> During the Deferred Payment Period, you agree to pay $2,000.00 each month, to be received by Bank of America by the 1st day of each such month. During the Deferred Payment Period, Bank of America will review your Loan to determine whether additional payment assistance can be offered to you. On July 1, 2011, and in Bank of America's sole and absolute discretion, either (1) you will be required to recommence your regularly scheduled payments and to make an additional payment, on terms to be determined by Bank of America, on or before the first of each month commencing on July 1, 2011 until all past due amounts owed to Bank of America have been paid in full, or (2) you will be required to reinstate your Loan in full, or (3) Bank of America will offer to modify your Loan or will offer you some other form of payment assistance, on terms to be determined solely by Bank of America and/or the Investors or Insurers on your Loan.

(*Id.* Ex. 1 at Page ID 618.) After the Maltbies made all of the payments under the Special Forbearance Agreement, BOA requested additional information for review by BOA's state mediation panel. (*Id.* ¶¶ 23–24.) The Maltbies provided the requested information. In addition, on August 16, 2011, the Maltbies notified BOA that their annual income had increased by $9,481.00. (*Id.* ¶ 26 & Ex. 2 at Page ID 627.)

In September 2011, BOA notified the Maltbies that they had been approved to participate in a Trial Period Plan (first TPP). (*Id.* ¶ 29 & Ex. 4.) The first TPP required the Maltbies to make payments of $1,722.34 on October 1, 2011, November 1, 2011, and December 1, 2011, and stated that "[a]fter all trial period payments are timely made, your mortgage will be permanently modified." (*Id.* ¶ 30 & Ex. 4.) The Maltbies made all of the required payments under the first TPP and attempted to continue making modified payments, but beginning in January 2012 BOA refused to accept the payments. (*Id.* ¶ 46.)

On March 7, 2012, a sheriff's sale was held, at which BOA purchased the Property and received a sheriff's deed. (*Id.* ¶ 42; Defs.' Br. Supp. Mot. Ex. C.) Thereafter, BOA transferred its interest to Fannie Mae by quitclaim deed.

In November 2012, BOA offered the Maltbies the opportunity to participate in a second Trial Period Plan (second TPP). (*Id.* ¶¶ 64, 132 ; Defs.' Br. Supp. Mot. Ex. E.) After the Maltbies elected to participate in the TPP, BOA rescinded the prior foreclosure sale by filing an Affidavit of Expungement with the Kent County Register of Deeds. (3d Am. Compl. ¶ 66; Defs.' Br. Supp. Ex. F.) At the conclusion of the second TPP, BOA offered the Maltbies a permanent loan modification. (3d Am. Compl. ¶¶67, 133; Defs.' Br. Supp. Mot. Ex. G.)

**B.      Procedural History**

The Maltbies filed this action in the Kent County Circuit Court on September 6, 2012. At the time they filed their complaint, the Maltbies obtained an *ex parte* temporary restraining order extending the redemption period for the foreclosure. BAC removed the case to this Court on September 18, 2012, on the basis of diversity jurisdiction. (Dkt. # 1.) Following the removal, the Court entered a series of orders extending the temporary restraining order to allow BOA to evaluate the Maltbies' eligibility for a loan modification, allow the Maltbies to participate in the second TPP, and allow the parties time to implement a permanent loan modification and discuss other options for a non-judicial resolution. (Dkt. ## 19, 32, 36, 39, 41.) During this time, Plaintiffs twice amended their complaint, adding an additional claim and new Defendants. On May 20, 2013, following BOA's offer of a permanent loan modification, Defendants moved to dismiss the second amended complaint. (Dkt. # 42.) In response, the Maltbies filed a third amended complaint, which added additional claims. (Dkt. # 47.) Defendants then filed the instant motion to dismiss, which has now been fully briefed.

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are

4

not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

Defendants move to dismiss all claims in the third amended complaint. The Maltbies concede that their quiet title and Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act claims are subject to dismissal, (Pls.' Resp. Br. at 18–19), but contend that the motion should be denied with regard to all other claims.

A. **Breach of Contract**

In Count I, the Maltbies allege that pursuant to the Special Forbearance Agreement, BOA agreed to modify their Mortgage if they complied with their obligations.[3] (3d Am. Compl. ¶¶

---

[3] The Maltbies refer to the Special Forbearance Agreement as a Partial Payment Agreement—the term the BOA representative used in the cover letter enclosing the Special Forbearance Agreement. (Dkt. # 47-1 at Page ID 617.)

5

69–70.) The Maltbies allege that BOA breached the Special Forbearance Agreement by refusing to modify their Mortgage and instead foreclosing on their home.[4]

The breach of contract claim fails for several reasons. First, assuming the Special Forbearance Agreement contractually bound BOA to modify the Mortgage, the Maltbies' admission that BOA offered them a permanent loan modification forecloses their breach of contract claim. That is, BOA in fact offered the Maltbies a mortgage modification, as the Maltbies allege BOA was bound to do. *See Anderson v. Bank of Am., N.A.*, No. 13-12834, at *6 (E.D. Mich. Oct. 24, 2013) (noting that "Plaintiff's breach of contract claim is belied by the fact that he was offered a loan modification which he rejected"). Thus, the Maltbies have pled themselves out of a claim.

The Maltbies contend that Rule 408 of the Federal Rules of Evidence, which prohibits introduction of evidence regarding settlement offers and negotiations, precludes the Court from considering BOA's offer of a loan modification to the Maltbies. The Court disagrees. Rule 408 precludes evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim." Fed. R. Civ. P. 408(1). In this case, the loan modification offer was not made as part of settlement negotiations, nor did it require the Maltbies to settle or compromise any claims asserted in this litigation. (Defs.' Br. Supp. Mot. Ex. G.) *Cf. Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997) (holding that Rule 408 did not bar consideration of a reinstatement letter because "an unconditional offer may not require the employee to abandon or modify his suit, and no such request was made by defendants"). The Maltbies also assert that "[t]he mortgage modification referenced in BOA's brief as rejected by the Maltbies has nothing to do with the Special Forbearance Agreement or the September 15, 2011 agreement." (Pls.' Resp. Br. at 14.)

---

[4] Defendants' statute of frauds argument assumes that the Maltbies rely on the first TPP and second TPP to establish their breach of contract claim. The Maltbies do not refer to the TPPs in their breach of contract claim, nor do they argue in their response that the TPPs served as a basis for their breach of contract claim.

6

However, the Special Forbearance Agreement simply refers to a loan modification and does not specify any particular terms of a proposed loan modification. The modification BOA offered the Maltbies thus constitutes a loan modification for purposes of the Special Forbearance Agreement.

Second, contrary to the Maltbies' contention, by its terms the Special Forbearance Agreement does not obligate BOA to modify the loan.[5] Instead, a modification is only one of three possible outcomes, any of which BOA had the sole discretion to choose:

> On July 1, 2011, and in Bank of America's sole and absolute discretion, either (1) you will be required to recommence your regularly scheduled payments and to make an additional payment, on terms to be determined by Bank of America, on or before the first of each month commencing on July 1, 2011 until all past due amounts owed to Bank of America have been paid in full, or (2) you will be required to reinstate your Loan in full, or (3) Bank of America will offer to modify your Loan or will offer you some other form of payment assistance, on terms to be determined solely by Bank of America and/or the Investors or Insurers on your Loan.

(Dkt. # 47-1 at Page ID 618.)

Finally, the Maltbies' breach of contract claim fails because even if the Special Forbearance Agreement obligated BOA to modify the Maltbies' loan, such requirement would be unenforceable. "To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Heritage Broad. Co. v. Wilson Commc'ns, Inc.*, 170 Mich. App. 812, 819, 428 N.W.2d 784, 787 (1988). "For a promise to loan money in the future to be sufficiently clear and definite, some evidence must exist of the material terms of the loan, including the amount of the loan, the interest rate, and the method of repayment." *State Bank of Standish v. Curry*, 442 Mich. 76, 88, 500 N.W.2d 104, 109–10 (1993). The Special Forbearance Agreement contained no such terms pertaining to a loan modification.

---

[5] As noted above, the Maltbies do not rely on the TPPs in their third amended complaint as the basis for their breach of contract claim. Nor do they argue in their response that the TPPs constituted the contract for their breach of contract claim. Accordingly, they have forfeited any argument based on the TPPs. *See Lahar v. Oakland Cnty.*, 304 F. App'x 354, 360 (6th Cir. 2008). In any event, because neither the first TPP nor the second TPP were signed by an authorized BOA representative, the statute of frauds would bar any claim based on the TPPs.

Moreover, the fact that the Special Forbearance Agreement gave BOA sole discretion to choose among three alternatives, one of which included a loan modification, shows that the parties did not intend that agreement to be a binding contract for a loan modification.[6]

**B.    Promissory Estoppel**

In their promissory estoppel claim, the Maltbies allege that "BOA promised the Maltbies that it would not foreclose and sheriff's sell the Maltbie home if the Maltbies made payments under the Partial Payment Plan." (3d Am. Compl. ¶ 75.) In their response, the Maltbies do not separately address their promissory estoppel claim. In any event, their promissory estoppel claim also lacks merit. To the extent the promissory estoppel claim relies on a promise not made in the Special Forbearance Agreement, it is barred by Michigan's statute of frauds. M.C.L.A. § 566.132(2); *see also Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 619 N.W.2d 66 (2000). Alternatively, if the claim relies on the Special Forbearance Agreement, it fails for the reasons stated above, as well as for lack of "an actual, clear, and definite promise." *Charter Twp. of Ypsilanti v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993).

**C.    Fraud and Misrepresentation Claims**

The Maltbies allege claims of fraudulent misrepresentation, innocent misrepresentation, and negligent misrepresentation in Counts V–VII. Essentially, the Maltbies allege that BOA, either directly or through its foreclosure counsel, misrepresented that it would review their loan for a modification and would modify their loan after completing its review. The Maltbies allege that these statements were false because BOA never intended to modify their loan, but instead, intended to use the loan review process to foreclose on the Maltbies' residence, purchase it at a sheriff's sale,

---

[6] Although BOA has raised several other grounds for dismissing the breach of contract claim, the Court need not reach those arguments.

and obtain the property following the expiration of the redemption period. (3d Am. Compl. ¶¶ 94, 95, 99, 104, 105, 109, 110.)

In general, under Michigan law a claim for fraudulent misrepresentation may be based only on a statement concerning a past or an existing fact. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). "Future promises are contractual and do not constitute fraud." *Id.* However, a plaintiff may demonstrate fraud based on a future promise by showing that the defendant had a present intent not to perform at the time it made the promise. *Id.* at 337–38, 247 N.W.2d at 816 (citing *Crowley v. Langdon*, 127 Mich. 51, 58–59, 86 N.W.2d 391, 394 (1901)). In the instant case, BOA's alleged statements that the Maltbies' loan would be modified are promises of future conduct that cannot support a fraudulent misrepresentation claim. The Maltbies contend, however, that the "bad faith" exception applies because they have alleged that BOA had no intention of modifying their loan. Although the Maltbies broadly allege such an intent, the claim is nonetheless subject to dismissal under Federal Rule of Civil Procedure 9(b) because the Maltbies allege no facts supporting their conclusory assertion that BOA never intended to modify their loan. The Sixth Circuit has held that when, as in this case, a plaintiff alleges fraud on information and belief, "the plaintiff must still set forth the factual basis for his belief." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007) (internal quotation marks omitted). The Maltbies' naked allegation of BOA's intent not to perform cannot support their fraud claim.

Although innocent misrepresentation claims also must be based on a past or existing fact, *see Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 380–81, 689 N.W.2d 145, 157 (2004), "[t]he 'bad faith' exception applicable to fraudulent misrepresentation does not apply to claims of innocent misrepresentation because innocent misrepresentation exists only where there

9

is no intent to deceive." *Id.* at 381, 689 N.W.2d at 157. Thus, the innocent misrepresentation claim—also based on BOA's alleged intent not to perform—is subject to dismissal for this additional reason.

The Maltbies' negligent misrepresentation claim fails because BOA owed no duty to the Maltbies. A plaintiff may sue a defendant for negligent misrepresentation only if the defendant owed the plaintiff a duty. *See Barclae v. Zarb*, 300 Mich. App. 455, 477, 834 N.W.2d 100, 116 (2013) ("Silent fraud and negligent misrepresentation both require a defendant to owe a duty to the plaintiff."). Although the Maltbies allege that BOA owed them a duty to provide them accurate information, their assertion of a duty is legally incorrect because BOA did not owe the Maltbies a duty of care. *See Qadeer v. Bank of Am., N.A.*, No. 12-14310, 2013 WL 424776, at *7 (E.D. Mich. Feb. 4, 2013) (stating that "the plaintiffs could not prevail on a claim for negligent misrepresentation even if they adequately had pleaded one, because a lender does not owe a duty of care to a loan applicant") (citing, among others, *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198–99, 480 N.W.2d 910, 912–13 (1991)); *Dingman v. OneWest Bank, FSB*, 859 F. Supp.2d 912, 921 (E.D. Mich. 2012) ("Notably, plaintiffs have not identified a duty that OneWest owed to plaintiffs. There is authority that no such duty exists.").

Finally, the Court notes that Michigan's statute of frauds bars all of the misrepresentation claims. With regard to claims against financial institutions, Michigan's statute of frauds provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

M.C.L. § 566.132(2). This provision applies to actions against financial institutions based upon a promise to modify a loan and is "'unambiguous.'" *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim–no matter its label–against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72. The Maltbies' misrepresentation claims—all of which are based on BOA's alleged promise to modify their loan—fall squarely within the scope of the statute of frauds. *See Loeffler v. BAC Home Loans Servicing, L.P.*, No. 11-cv-13711, 2012 WL 666750, at *5 (E.D. Mich. Feb. 29, 2012) (holding that the plaintiff's fraud and misrepresentation claims, based on the defendant's statement that the plaintiff would be considered for a loan modification, were barred by the statute of frauds); *Brown v. Bank of N.Y. Mellon*, No. 1:10-CV-550, 2011 WL 6016901, at *4 (W.D. Mich. Dec. 2, 2011) ("Plaintiff's misrepresentation claims, like her breach of the 2008 Loan Modification claim, are barred by the statute of frauds.").

### D.  Intentional Infliction of Emotional Distress

Count VIII alleges that BOA committed the tort of intentional infliction of emotional distress by luring the Maltbies into a loan modification process that it never intended to complete and conducting a foreclosure during the loan modification review process.

To establish a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe

emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608, 374 N.W.2d 905, 908 (1995). Conduct is considered extreme and outrageous if it goes beyond the bounds of decency and would be considered atrocious and utterly intolerable in civilized society. *Johnson v. Wayne Cnty.*, 213 Mich. App. 143, 161, 540 N.W.2d 66, 74 (1995). "In Michigan, this standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts with him in various ways and foreclosed on this property." *Cingolani v. BAC Home Loans Servicing, L.P.*, No. 11-15159, 2012 WL 3029829, at *6 (E.D. Mich. July 25, 2012) (internal quotation marks omitted); *see also Rudley v. Bank of Am. Home Loans Servicing LP*, No. 1:11-CV-1374, 2013 WL 2407614, at *6 (W.D. Mich. May 31, 2013) ("Plaintiff's claims that Defendants mismanaged her payments, and defaulted on their oral promises for loan modifications, is not sufficient to state a plausible claim for intentional infliction of emotional distress under Michigan law."); *Lyons v. Trott & Trott*, 905 F. Supp. 2d 768, 774 (E.D. Mich. 2012) (concluding that the plaintiff's allegations that the defendant failed to offer her a reasonable loan modification before proceeding with a foreclosure sale failed to state a colorable claim for intentional infliction of emotional distress).

The Maltbies' allegations in this case—which amount to the claim that BOA failed to offer them a loan modification and foreclosed on their property during the modification review process—are not materially different from other cases holding that similar conduct does not constitute extreme or outrageous conduct. The Maltbies' allegations show that they were in default on the Mortgage, that BOA had a right to foreclose, and that BOA considered them for (an in fact offered) a loan modification. In short, "the factual allegations do not evince a pattern of continuous unnecessary harassment that could be deemed sufficiently outrageous." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 825 (6th Cir. 2012).

**E.     Equal Credit Opportunity Act**

In their final claim, the Maltbies allege that BOA violated the ECOA by failing to provide them notice of its decision to deny their application for new credit and by failing to furnish a statement of reasons for the denial. *See* 15 U.S.C. § 1691(d)(1), (2). Pertinent to the Maltbies' claim, the ECOA requires a creditor to provide a credit applicant "against whom adverse action is taken . . . a statement of reasons for such action." 15 U.S.C. § 1691(d)(2). The ECOA defines an "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the same terms requested." 15 U.S.C. § 1691(d). The "term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." *Id.* In addition, the term "does not include '[a]ny action or forbearance relating to an account taken *in connection* with inactivity, *default, or delinquency* as to that account.'" *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998) (quoting 12 C.F.R. § 202.2(c)(2)(ii)) (italics in original).

BOA contends that the Maltbies' ECOA claim fails because they were already in default on the loan at the time it denied them a loan modification and thus, no adverse action occurred. The Maltbies respond that BOA's denial constituted an adverse action because they were seeking a modification—"a change in the terms of an existing credit arrangement"—rather than "additional credit" under their existing loan.

The Maltbies' argument lacks merit. As the Sixth Circuit has recognized, *any action* in connection with a default or delinquency on an existing account is not considered an adverse action. *See id.* at 406. Moreover, courts have concluded that the denial of a modification following a default on an existing loan obligation is not an adverse action under the ECOA. *See Eicholz v. Wells Fargo*

*Bank, NA*, No. 10-cv-13622, 2011 WL 5375375, at *9 (E.D. Mich. Nov. 7, 2011) ("The [Home Affordable Modification Program] trial program did not modify Plaintiff's underlying mortgage obligations and Plaintiff was already in default on April 29, 2010, when Defendant notified Plaintiff of the modification decision. As a result, Defendant's denial did not constitute an adverse action and was not subject to the notice requirements of the ECOA."); *Pandit v. Saxon Mortg. Servs., Inc.*, No. 11-CV-3935(JS)(GRB), 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17, 2012) (noting that "in making reduced payments during the Trial Period, Plaintiffs were in default on their mortgage for the purposes of the ECOA"). Because the Maltbies admit they were in default on the loan at the time BOA denied them a loan modification, their ECOA claim fails as a matter of law.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and dismiss the Maltbies' third amended complaint with prejudice.

An Order consistent with this Opinion will be entered.


Dated: November 19, 2013                    /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE

---

[7] The Maltbies' assertion that they were entitled to notice of BOA's change in the terms of their existing loan lacks merit. In denying a modification, BOA was not changing the terms of the existing loan, which remained in place.